Electronically Submitted
11/25/2020 9:47 AM
Gregg County District Clerk
By: Debbie Kinney, deputy

Cause No. 2020-2162-B

| | | |
|---|---|---|
| Dr. Ebenezer Nii-Moi, § | | In the District Court |
| § | | |
| *Plaintiff*, § | | |
| vs. § | | |
| § | | Gregg County, TX |
| McAllen Hospitalist Group, PLLC, § | | |
| d/b/a Valley Care Clinics, § | | |
| § | | |
| *Defendant*. § | | 124th Judicial District |

## Plaintiff's Original Petition, Request for Disclosure, and Jury Demand

Plaintiff, Dr. Ebenezer Nii-Moi, complains of Defendant, McAllen Hospitalist Group, PLLC d/b/a Valley Care Clinics (VCC), for violating the Age Discrimination in Employment Act (ADEA),[1] Title VII of the Civil Rights Act of 1964 (Title VII),[2] and the Texas Commission on Human Rights Act (TCHRA)[3], and breach of contract and quantum meruit as follows:

---

[1] 29 U.S.C. §§ 621-634 (2000).
[2] 42 U.S.C. § 2000e—2(a)(1).
[3] Tex. Labor Code § 21.

**Plaintiff's Original Petition, Request for Disclosure, and Jury Demand – Page 1**

I.

## Introduction

Dr. Nii-Moi is a Black male OB-GYN over forty years old. After VCC hired him to open OB-GYN clinics in McAllen and San Juan, a new regime terminated him and the only other Black man over forty years old and, ultimately, replaced them with Hispanic and White females under forty years old. VCC's billboards aptly demonstrate the discrimination:

Pre-discrimination



Post-discrimination



## II.

## Discovery Level

1. Plaintiff affirmatively pleads that discovery should be conducted in accordance with a Level 3 discovery control plan under Texas Rule of Civil Procedure 190.3.

## III.

## Statement of Relief Sought

2. Plaintiff seeks monetary relief in an amount over $1,000,000.

## IV.

## Parties

3. Plaintiff, Dr. Ebenezer Nii-Moi, is an individual residing in Gregg County, Texas. He was born in 1975.

4. Defendant, McAllen Hospitalist Group, PLLC d/b/a Valley Care Centers, is a Texas non-profit medical corporation with its principal office at 367 S. Gulph Road, King of Prussia, PA 19406-3121. VCC does business in the Southern District of Texas and maintains an office at 1800 South 5th Street, McAllen, Hidalgo County, TX 78501. VCC may be served with citation by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## IV.

### Jurisdiction and Venue

5. Dr. Nii-Moi seeks damages within the Court's jurisdictional limits.

6. Venue is proper in Gregg County and is permissive in this cause under Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in this county. Specifically, the breach of the agreement occurred in Gregg County when Defendant failed and refused to pay Dr. Nii-Moi in Gregg County, Texas. Furthermore, Dr. Nii-Moi suffered and continues to suffer damages in Gregg County when Defendant failed to pay monies due and payable in Gregg County, Texas.

## IV.

### Exhaustion of Administrative Remedies

7. Dr. Nii-Moi timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission and Texas Workforce Commission on May 3, 2019. In September 2020, he received the TWC's Right to Sue letter. In early November 2020, he received the EEOC's Right to Sue letter.

## V.

### VCC's Discrimination Against Dr. Nii-Moi

8. VCC operates various medical clinics in Texas' Rio Grande Valley. VCC is a big business and, in fact, a subsidiary of Universal Health Services, Inc.—a Pennsylvania-based company claiming to be "one of the largest healthcare management companies in the nation …." VCC's clinics include a wide-range of medical specialties—including OB-GYN.

9. Sometime in 2015 or 2016, VCC decided to expand its OB-GYN footprint in the Rio Grande Valley. At the time, VCC maintained a clinic in Edinburg, Texas, staffed by Dr. Thiendella Diagne—a Black man over forty who also served as Chairman of South Texas Health Systems (STHS) OB-GYN. STHS, and its subsidiary VCC, saw an opportunity to open a new OB-GYN clinic in McAllen.

10. Dr. Nii-Moi is an OB-GYN, and he is also a Black man over forty years old. In 2016, he had been a practicing physician in Virginia for nine years. While he was gaining valuable experience in this practice, it did not offer him the ability to establish his own OB-GYN practice, which was an opportunity he was looking for.

11. Dr. Diagne knew Dr. Nii-Moi from medical school and practicing in Virginia. Dr. Diagne recommended Dr. Nii-Moi to VCC as an experienced physician that was ready and willing to move to the Rio Grande Valley and open VCC's planned McAllen clinic. Todd

          Mann, McAllen Medical Center's CEO, interviewed Dr. Nii-Moi and offered him the position in McAllen.

12. Dr. Nii-Moi accepted VCC's offer, which also included payment of up to $10,000 in moving expenses. He resigned his established position in Virginia and began the process of moving to South Texas. The move cost Dr. Nii-Moi over $13,000 in expenses, which he submitted to VCC for reimbursement. Despite the move from Virginia to South Texas, this was an opportunity to build his own practice and, with hard work, experience the same or similar success as Dr. Diagne at VCC's Edinburg OB-GYN clinic.

13. Dr. Nii-Moi's new clinic was ideally set up for a single practicing physician. It had four exam rooms, an office, and a waiting room. Further, Dr. Nii-Moi personally trained his two medical assistants. Based on Dr. Nii-Moi's experience, this clinic and its staff would fully support his growing practice.

14. And, Dr. Nii-Moi's practice did begin growing. When not seeing patients, he marketed his new clinic to nearby referring physicians. His patient counts and workload began increasing.

15. The increases were welcomed, in part, because of the way VCC compensated him. Acknowledging that Dr. Nii-Moi was building a practice from scratch, VCC guaranteed Dr. Nii-Moi's compensation for two years. After two years, however, VCC no

longer guaranteed his compensation. Instead, it would be based on his production.

16. After hiring Dr. Nii-Moi, VCC also tapped him to build an OB-GYN clinic in San Juan, TX. He began travelling to and from San Juan to perform this work. He was building a brand new OB-GYN practice in San Juan while also building his practice in McAllen.

17. Dr. Nii-Moi began experiencing discriminatory conduct in early 2018. This discrimination coincided with VCC installing Kristie Foster—a White woman—as its Director. Mrs. Foster quickly began pushing Dr. Nii-Moi out of his own clinic to ultimately replace him with younger, White females.

18. For example, Mrs. Foster placed—Dr. Pettle—a young White female physician in his McAllen clinic without even asking Dr. Nii-Moi if his clinic needed or could even physically accommodate another physician. Rather, Mrs. Foster simply informed Dr. Nii-Moi that she was placing Dr. Pettle in his clinic. Had she asked Dr. Nii-Moi, Mrs. Foster would have learned that, while Dr. Nii-Moi's practice was growing, it did not have the patient volume to sustain two OB-GYN's. In other words, Dr. Nii-Moi—who was still building his practice and whose compensation would soon depend on his production—would have to share his patients with

Dr. Pettle even though he had the time and resources to treat them himself.

19. Additionally, Mrs. Foster would have learned that Dr. Nii-Moi's clinic—which VCC helped set up—did not have the physical space or staff to assist a new OB-GYN. Indeed, the clinic's four exam rooms were not adequate for two clinicians. Similarly, Dr. Nii-Moi's two trained medical assistants could not efficiently assist two OB-GYN's. And, there was simply no office space for Dr. Pettle; as a result, she officed in a cleaned-out supply closet. There was no legitimate, non-discriminatory reason to force another OB-GYN into Dr. Nii-Moi's small clinic.

20. Although it appeared that VCC and Mrs. Foster were pushing Dr. Nii-Moi out of his own clinic, he was forced to acquiesce. He sent a number of his patients to Dr. Pettle; he allowed Dr. Pettle to use his exam rooms; and, he authorized his staff to assist her. Each of these actions personally cost Dr. Nii-Moi.

21. But Mrs. Foster persisted in pushing Dr. Nii-Moi out. In early September 2018, Dr. Nii-Moi went on a mission trip to Africa. When he arrived back at his clinic, he discovered that Mrs. Foster had placed another OB-GYN in his clinic—Dr. Vera, a Hispanic female under forty-years old. Yet, VCC and Mrs. Foster had not taken any steps to alleviate the physical concerns, the staffing concerns, or

that Dr. Vera had no patients of her own. They were again requiring Dr. Nii-Moi to send patients *while he was trying to build his own practice.*

22. Towards the end of 2017, the OB-GYN practice was growing—in large part—due to Dr. Nii-Moi's arrival and business development efforts. VCC recognized a need for a back-up call system to support this growth. The system would be consistent with what other specialties used. VCC told Dr. Nii-Moi that it would offer him a contract and pay that mirrored the new policy. VCC expected Dr. Nii-Moi to perform this duty, and he agreed to perform it based on VCC's promise to pay him for it. In other words, VCC promised to pay him for this on call duty. Dr. Nii-Moi performed the duty; VCC received the benefit of it; but, VCC never paid Dr. Nii-Moi as it had promised. Notably, it also did not pay Dr. Diagne.

23. A pretext was all VCC and Mrs. Foster needed to completely push Dr. Nii-Moi out of his own clinic. And Dr. Pettle gave them a pretext by submitting a complaint about Dr. Nii-Moi. VCC and Mrs. Foster never provided Dr. Nii-Moi the opportunity to respond to this complaint. Instead, Mrs. Foster had all of Dr. Nii-Moi's appointments cancelled—again, without consulting him—and terminated him in a brief meeting.

24. Shocked, Dr. Nii-Moi called Dr. Diagne. Dr. Diagne—the Department Chairman—had not been consulted on the termination, but had a previously scheduled meeting with Mrs. Foster where he offered to ask her about it. Instead, Mrs. Foster terminated Dr. Diagne, too.

25. Within thirty minutes, VCC and Mrs. Foster had terminated the only Black, male OB-GYN's over forty years old, and, within days, had a new staff of young, Hispanic and White, female doctors staffing the Edinburg and McAllen OB-GYN clinics.

26. VCC's took down the old clinic billboard:



And, VCC replaced it with the new billboard:



## VI.

## Age Discrimination in Employment Act Claim

27. Dr. Nii-Moi repeats and re-alleges the allegations contained Paragraphs 1 to 23 as if fully stated here.

28. Dr. Nii-Moi has satisfied all jurisdictional prerequisites in connection with his ADEA claim.

29. VCC's actions constitute intentional age discrimination in violation of the ADEA. Specifically, VCC abruptly terminated Dr. Nii-Moi as part of a focused effort to older doctors from its OB-GYN clinics. VCC terminated Dr. Nii-Moi because of his age.

30. As a result of VCC's actions, Dr. Nii-Moi has suffered and will continue to suffer pecuniary losses, including but not limited to lost wages and benefits associated with his employment. Dr. Nii-Moi will also incur legal fees for pursuing this action against VCC.

31. VCC's actions were willful. Thus, Dr. Nii-Moi is entitled to liquidated damages under the ADEA.

32. Dr. Nii-Moi seeks attorney's fees and costs of suit.

## VII.

## Title VII Claim

33. Dr. Nii-Moi repeats and re-alleges the allegations contained Paragraphs 1 to 23 as if fully stated here.

34. Dr. Nii-Moi has satisfied all jurisdictional prerequisites in connection with his Title VII claim.

35. VCC's actions constitute discrimination under Title VII. Specifically, VCC discriminated against Dr. Nii-Moi based on his National Origin (African-American), Color (Black), Race (Black), and Sex (Male). Dr. Nii-Moi was qualified for his position as an OB-GYN and performing his job well. VCC fired him based on the above protected classes and replaced him with less-qualified, but lighter-skinned Hispanic and White Females.

36. As a result of VCC's discriminatory actions, Dr. Nii-Moi has suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and benefits associated with his employment, damage to his personal and professional reputation, undue stress, anxiety, mental anguish, loss of seniority, job search expenses, and moving expenses. Dr. Nii-Moi will also incur legal fees for pursuing this action against VCC.

37. VCC's actions were willful.  Thus, Dr. Nii-Moi also seeks punitive damages against VCC.

38. Dr. Nii-Moi seeks attorney's fees and costs of suit. intentional age discrimination in violation of Title VII.

## VIII.

## Texas Commission on Human Rights Act Claim

39. Dr. Nii-Moi repeats and re-alleges the allegations contained Paragraphs 1 to 23 as if fully stated here.

40. Dr. Nii-Moi has satisfied all jurisdictional prerequisites in connection with his TCHRA claim.

41. VCC's actions constitute intentional discrimination based on Dr. Nii-Moi's Age, National Origin (African-American), Color (Black), Race (Black), and Sex (Male)national origin in violation of the TCHRA. Specifically, VCC terminated Dr. Nii-Moi based on these protected traits.

42. As a result of VCC's discriminatory actions, Dr. Nii-Moi has suffered and will continue to suffer pecuniary losses, including but not limited to lost wages and benefits associated with his employment as well as other compensatory damages.

43. Additionally, Dr. Nii-Moi has suffered and expects to suffer non-pecuniary losses, including, but not limited to, damage to personal and professional reputation, undue stress, anxiety, and other non-pecuniary losses.

44. VCC has acted and continues to act with malice and reckless indifference to Dr. Nii-Moi's state-protected rights, and, thus, he is entitled to punitive damages under the Texas Labor Code.

45. Dr. Nii-Moi seeks attorney's fees and costs of suit.

**IX.**

**Breach of Contract**

46. Dr. Nii-Moi has performed all conditions, covenants, and promises under the contract to be performed on his part, but VCC has breached the contract. Specifically, VCC promised to reimburse Dr. Nii-Moi up to $10,000 in moving expenses. Dr. Nii-Moi incurred moving expenses over $10,000 and submitted them to VCC for reimbursement up to $10,000. VCC, however, has failed to reimburse Dr. Nii-Moi's moving expenses, which is a breach of contract. As a result, in addition to the unreimbursed moving expenses, Dr. Nii-Moi is entitled to an award of reasonable and necessary attorney's fees pursuant to Texas Civil Practice & Remedies Code § 38.001. He is entitled to these fees through trial and any appeal by VCC.

X.

**Quantum Meruit**

47. VCC asked for and Dr. Nii-Moi provided valuable back-up call services to VCC. VCC accepted Dr. Nii-Moi's services under such circumstances that VCC was reasonably notified that Dr. Nii-Moi expected to be paid for his work by VCC. In fact, VCC paid its other doctors for their back-up call service. VCC, however, never paid Dr. Nii-Moi for back-up call services that he provided to VCC.

And, VCC's failure to pay has resulted in economic damages to Dr. Nii-Moi.

## XII.

## Request for Disclosure

48. Pursuant to Rule 194, Defendant is requested to disclose, within 50 days of service of this request, the information or material described in Rule 194.2.

## XIII.

## Request for Jury

49. Dr. Nii-Moi respectfully requests that this matter be tried before a jury.

## IX.

## Prayer for Relief

50. Dr. Nii-Moi respectfully requests that he have a judgment against VCC awarding him the following damages:

   a. Back pay, including but not limited to, lost wages and employment benefits;

   b. Equitable relief necessary to place Dr. Nii-Moi in the position he would have held but for VCC's discriminatory treatment, and if this is not feasible, then front pay;

   c. Actual damages;

   d. Liquidated damages in the maximum amount allowed by law;

  e. Compensatory and punitive damages in the maximum amount allowed by law;

  f. Prejudgment and post-judgment interest;

  g. Attorney's fees, expert witness fees, and costs of suit; and

  h. Any further legal and equitable relief he is entitled to.

Respectfully submitted,

*/s/ Gregory P. Love*
Gregory P. Love
State Bar No. 24013060
Love Law Firm
P.O. Box 948
Henderson, Texas 75653
Tel: 903.212.4444
Fax: 903.392.2267
Email: greg@lovetrialfirm.com

Justin L. Jeter
State Bar No. 24012910
Jeter Melder, llp
1111 S. Akard Street, Suite 100
Dallas, Texas 75215
Tel: 214.699.4758
Fax: 214.593.3663
Email: justin@jetermelder.com

**Attorneys for Plaintiff**